## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JASON MITCHELL R.,[1]        )
                            )
         **Plaintiff,**     )
                            )     **CIVIL ACTION**
**v.**                         )
                            )     **No. 20-4041-JWL**
**KILOLO KIJAKAZI,[2]**      )
**Acting Commissioner of Social Security,**   )
                            )
        **Defendant.**    )
_____)

## MEMORANDUM AND ORDER

Plaintiff, appearing <u>pro se</u>[3] seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

[3] Because he appears pro se, the court construes Plaintiff's pleadings and briefs liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Travis v. Park City Mun. Corp.</u>, 565 F.3d 1252, 1254 (10th Cir. 2009). But the court will not assume the role of advocate for him. <u>Garrett v. Selby Conner Maddux & Janer</u>, 425 F.3d 836, 840 (10th Cir. 2005).

(hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

Plaintiff protectively filed applications for DIB and SSI benefits on February 13, 2018.  (R. 12, 226).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in considering the consultative evaluation report of the Southern Medical Group (Doc. 25, pp. 1-2) (hereinafter Pl. Br.), did not accept as evidence certain paperwork he provided containing "very important MRI's done with either St. Francis Health or Tallgrass Orthopedics," id. at 2, and did not take his mental health into consideration in making the decision.  Id.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e),

416.920(e).  This assessment is used at both step four and step five of the sequential

evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining

at step four whether, considering the RFC assessed, claimant can perform his past

relevant work; and at step five whether, when also considering the vocational factors of

age, education, and work experience, he is able to perform other work in the economy.

Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the

burden is on Plaintiff to prove a disability that prevents performance of past relevant

work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are

within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th

Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.     Consultative Evaluation Report of Southern Medical Group

Plaintiff questions the reliability of Southern Medical Group because it had a small

office in a run-down building, he had not heard of them before or since, they had one

4

doctor and one assistant, and he "was probably in and out in 10 minutes."  (Pl. Br. 1-2).

The Commissioner points out that the report of Dr. Dominick's consultative examination

from Southern Medical Group contained all required elements of such a report, indicating

a complete examination.  (Comm'r Br. 7). (citing 20 C.F.R. §§ 404.1519n, 416.919n).

The court notes that the regulations contain the required qualifications to perform a

consultative examination; 20 C.F.R. §§ 404.1519g, 416.919g; and Plaintiff does not

suggest Dr. Dominick does not meet all of those qualifications.  Moreover, the

regulations provide a means and the standards to object to a particular provider before the

examination takes place, and Plaintiff did not make an objection to the SSA.  Finally, and

most importantly, the ALJ found Dr. Dominick's opinion was not persuasive and did not

rely upon it in his RFC assessment.  (R. 29).  Therefore, even if there was an error in

selecting Dr. Dominick of the Southern Medical Group to perform the consultative

examination (and the court finds none), the error was harmless because Plaintiff has

shown no harm flowing from that decision.

## III.    Refusal to Accept Evidence

Plaintiff claims the ALJ refused to accept important MRIs directly from Plaintiff,

and explained:

> This was probably due to the lack of information on the paperwork that I
> had.  The paperwork didn't list any addresses and in regards to the facility
> only had the information, "FED" on one of the imaging's paperwork and
> "FDR" on the other.  I provided the phone number for the facilities but
> obviously that wasn't enough.  I still have the paperwork and test results.

(Pl. Br. 2).  The Commissioner argues this assertion is incorrect, that "Multiple shoulder

imaging reports were in the record, and the ALJ noted the same."  (Comm'r Br. 7).

The ALJ's alleged refusal to accept evidence could potentially be a reversible error, but the circumstance surrounding Plaintiff's allegations are not clear and are not supported by the record evidence.  Plaintiff does not say precisely when he attempted to provide this evidence to the ALJ but it appears he alleges he did so at the hearing.  (Pl. Br. 2) ("When it came to my Administrative Law Judge Hearing, the ALJ" accepted the Southern Medical Group report but "the judge did not accept as evidence" Plaintiff's MRIs from either St. Francis Health or Tallgrass Orthopedics.).  However, the transcript of the hearing does not support an attempt to provide additional MRI evidence to the ALJ.  (R. 43-44).  Plaintiff did tell the ALJ he brought medical evidence with him to the hearing.  Id. at 43.  Confusingly, Plaintiff said "I brought updated medical records since November 15th," but when the ALJ asked, "So are there additional records that I need to request then or do you have them with you today?" Plaintiff responded, "No, I do not have them."  Id.  In an apparent attempt to clarify the issue, the ALJ stated, "Cause on, on this, on this document that you filled out today with your recent medical treatment you didn't list any treatment after October 31st of '18. With Doctor Poole."  Id.  Plaintiff responded, "Yeah, that's all I have with me."  At the end of the hearing, the ALJ explained that he would request records from Valeo Behavioral Health Care and updated records from Stormont Vail Health.  Id. at 67-68.

If Plaintiff had additional MRIs which he desired to provide at the hearing, he did not make that known at the hearing and the transcript makes it clear the ALJ was not aware of any additional evidence Plaintiff desired to give to him at that time. Additionally, the ALJ secured the evidence he mentioned at the hearing and proffered

that evidence to Plaintiff for review.  (R. 306-07).  In his proffer letter the ALJ explained

that Plaintiff could "submit any or all of the following: written comments concerning the

evidence, a written statement as to the facts and law you believe apply to the case in light

of that evidence, and any additional records you wish me to consider." (R. 306).  He did

not respond to the ALJ's letter and did not submit additional evidence.  Id. at 22.

Moreover, as the Commissioner argues in her brief, the record contains the result

of MRI and x-ray imaging of Plaintiff's shoulders.  Specifically, the record contains MRI

results for both Plaintiff's left shoulder and his right shoulder and in medical records

from both St. Francis Health and Tallgrass Orthopedics.  From St. Francis Health Center,

the record contains an MRI of Plaintiff's right shoulder performed on March 21, 2017.

Id. at 320-21.  The "Impression" was "Essentially normal MRI right shoulder.  No rotator

cuff or labral tear." Id. 321.  The records from Tallgrass Orthopedics include a copy of

the same MRI, dated March 21, 2017.  Id. 350-51.  The records from Stormont Vail

Health include an MRI of the left shoulder, dated May 10, 2016.  Id. 411.  The

"Impression" is "1.  Hill-Sachs impaction fracture of the posterior lateral humeral head

with mild associated edema.  2.  No evidence of tendon or labral tear." Id.  Another

record from Stormont Vail Health includes the results of MRIs of both the right and left

shoulders.  Id. 532-36.  The "Impression" for the right shoulder MRI is "Moderate sized

acute Hill-Sachs deformity on the right humerus with a soft tissue Bankart lesion

showing ALPSA-like morphology." Id. 532.  The "Impression" for the left shoulder MRI

is "1. Residual deformity from a chronic impaction fracture of the posterior lateral

humeral head and evidence of a soft tissue Bankart injury to the anterior inferior glenoid

labrum.  2. No rotator cuff or acromioclavicular pathology is shown."  Id. 534.  It seems to the court very likely that the MRI results to which Plaintiff refers were included in the record.  In any case, Plaintiff has not provided evidence that he proffered or that the ALJ refused to admit any MRI results into the record.

## IV.    Consideration of Mental Health Impairments or Treatment

Plaintiff claims, "the Administrative Law Judge didn't take my mental health into consideration at all at the hearing and even said it on record that he was leaving it out." (Pl. Br. 2).  The Commissioner counters that the ALJ considered Plaintiff's mental health, pointing to findings of the ALJ and record evidence supporting those findings.  (Comm'r Br. 8-10).

### A.    The ALJ's Findings

At step two of his evaluation, the ALJ found Plaintiff has mental impairments of "major depression and adjustment disorder with anxiety."  (R. 24) (finding no. 3, bold omitted).  At step three he found that Plaintiff has a moderate limitation in each of the four mental functional areas; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Id. at 25-26.  And he explained his reasons for these findings, citing the evidence he relied upon for each finding.  Id.  He found that the paragraph B criteria and the paragraph C criteria of Listings 12.04 (depressive, bipolar, and related disorders) and Listing 12.06 (anxiety, and obsessive-compulsive disorders) are not met and that Plaintiff's mental limitations do not meet or equal the severity of any mental disorders. Id.

The ALJ noted that Plaintiff "is alleging disability due to … mental impairments." (R. 27). He summarized the record evidence relating to Plaintiff's mental health and stated his conclusion that Plaintiff's

> physical and mental impairments are adequately accommodated by limiting him to sedentary work with additional postural, manipulative, environmental and mental limitations as stated above. The record contains evidence of various impairments, such as … major depression and adjustment disorder with anxiety. The undersigned accounted for the combination of the claimant's impairments and symptoms, such as pain and irritability, with the limitations in the above residual functional capacity. His admitted activities of daily living are not consistent with the level of impairment he is alleging. Accordingly, the undersigned finds the above residual functional capacity reflects the most the claimant could do on a sustained basis, and nothing in the record suggests the claimant has further limitation.

Id. 48.

### B.   Analysis

Once again, the record does not support Plaintiff's allegation the ALJ didn't take his mental health into consideration at the hearing and said that he was leaving it out. As the record citations above reveal the ALJ considered and discussed Plaintiff's mental health in the final decision. Moreover, the ALJ questioned Plaintiff about his mental health at the hearing and confirmed he had a hospitalization at Valeo Behavioral Health Care and was being treated there by Dr. Bradshaw. (R. 56-59). In the transcript there is no indication the ALJ intended to leave out Plaintiff's mental health and at the end of the hearing the ALJ noted that since he had to request records from Valeo he was also going to request updated records from Stormont Vail even though he did not expect "anything dramatic in there." (R. 68).

The court finds no error in the ALJ's decision.  The ALJ applied the correct legal standard, explained his findings, and cited to record evidence which supports them.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 26, 2022, at Kansas City, Kansas.


s:/ *John W. Lungstrum*_____
**John W. Lungstrum**
**United States District Judge**